UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN J. LELINSKI

    Petitioner,

v.　　　　　　　　　　　　　　　　Docket No.

PETER HUIBREGTSE　　　　　　　　10-C-0108

    Respondent.

---

## BRIEF IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

---

By: Steven J. Lelinski
    Petitioner, pro se

P.O. ADDRESS
Steven J. Lelinski  510709
Wisconsin Secure Program Facility
Post Office Box 9900
Boscobel, WI  53805-0901

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................... i

TABLE OF AUTHORITIES ....................................... ii

DECLARATION UNDER PENALTY OF PERJURY ...................... iii

STATEMENT OF ISSUES PRESENTED ............................... 1

STATEMENT OF THE CASE ....................................... 1

ARGUMENTS

    I.   A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254 IS THE PROPER REMEDY FOR SETTING ASIDE PETITIONER'S GUILTY CONVICTION ............................................ 5

    II.  THE PETITIONER'S RIGHT OF DUE PROCESS WAS VIOLATED BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE; SPECIFICALLY, THAT ALL REQUIRED ELEMENTS OF THE CRIME WERE NOT PROVEN ............................ 6

    III. THE PETITIONER'S RIGHT TO DUE PROCESS WAS VIOLATED BECAUSE OTHER ACTS EVIDENCE PERTAINING TO THE PETITIONER'S CHARACTER WAS ENTERED INTO EVIDENCE DESPITE THE FACT THAT THE EVIDENCE'S PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY THE UNFAIR PREJUDICE THAT IT POSED TO THE PETITIONER ..................... 9

    IV.  THE PERFORMANCE OF PETITIONER'S TRIAL COUNSEL WAS SO DEFICIENT AS TO BE CONSIDERED INEFFECTIVE, FOR FAILING TO BRING FORTH PRIOR INSTANCES OF THE VICTIM'S UNTRUTHFUL CHARACTER IN A CREDIBILITY CONTEST ..... 13

RELIEF REQUESTED ........................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE#**

Baldwin, State v., 101 Wis.2d 441,
    304 N.W.2d 742 (1981) ................................. 7-8

Bonds, State v., 165 Wis.2d 441,
    477 N.W.2d 265 (1991) ................................. 7-8

Cofield, State v., 2000 WI App 196, 238 Wis.2d 467,
    618 N.W.2d 214 ......................................... 9

DeKeyser, State v., 221 Wis.2d 435,
    585 N.W.2d 668 (Ct. App. 1998) ......................... 9

Hayes, State v., 2003 WI App 99, 264 Wis.2d 377,
    663 N.W.2d 351 ....................................... 7-9

Jeannie M.P., State v., 2005 WI App 183, 223 Wis.2d 303,
    588 N.W.2d 8 (1999) ................................. 13-15

Lelinski, State v., 2009 WI App 110,
    771 N.W.2d 929 ......................... 5-7, 9, 11, 14-15

Strickland v. Washington, 466 U.S. 668 (1984) .............. 14

Sullivan, State v., 216 Wis.2d 768,
    576 N.W.2d 30 (1998) ................................. 11

**WISCONSIN STATUTES**                                                    **PAGE#**

Section 904.04(2) Wis. Stats. (2007-08) .................... 2

Section 940.225(2)(a) Wis. Stats. (2007-08) ................ 6

**OTHER SOURCES**                                                         **PAGE#**

3B JAY E. GRENIG, ET AL, WISCONSIN PRACTICE: CIVIL RULE
HANDBOOK, §906.08:1 (2008 2nd ed.) ...................... 13, 15

7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE,
§608.2 (2007 2nd ed.) ...................................... 13

## DECLARATION UNDER PENALTY OF PERJURY

I hereby declare under penalty of perjury that all the information contained in this brief is true and correct. This petition is 15 pages and 5,656 words.

Signed this 1st day of February, 2010.

*Steven J. Lelinski*
Steven J. Lelinski
Petitioner, pro se

## Statement of Issues Presented

I. IS THE WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254 THE PROPER REMEDY FOR SETTING ASIDE PETITIONER'S GUILTY CONVICTION?

Petitioner answers YES.

II. WAS THE PETITIONER'S RIGHT OF DUE PROCESS VIOLATED BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE; SPECIFICALLY, THAT ALL REQUIRED ELEMENTS OF THE CRIME WERE NOT PROVEN?

Petitioner answers YES.

III. WAS THE PETITIONER'S RIGHT TO DUE PROCESS VIOLATED BECAUSE OTHER ACTS EVIDENCE PERTAINING TO THE PETITIONER'S CHARACTER WAS ENTERED INTO EVIDENCE DESPITE THE FACT THAT THE EVIDENCE'S PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY THE UNFAIR PREJUDICE THAT IT POSED TO THE PETITIONER?

Petitioner answers YES.

IV. WAS THE PERFORMANCE OF PETITIONER'S TRIAL COUNSEL SO DEFICIENT AS TO BE CONSIDERED INEFFECTIVE, FOR FAILING TO BRING FORTH PRIOR INSTANCES OF THE VICTIM'S UNTRUTHFUL CHARACTER IN A CREDIBILITY CONTEST?

Petitioner answers YES.

## Statement of the Case

A complaint filed against Lelinski, a police officer, alleged that on October 18, 2005, he committed three crimes against Amanda R.: second degree sexual assault by use or threat of use of force; attempted second degree sexual assault by use or threat of use of force; and lewd and lascivious behavior. (R.2). The State filed an amended complaint, alleging that nearly four years prior, Lelinski committed two criminal acts of third degree sexual assault on Myrtle M. (R.4). Before trial, the State filed another criminal complaint against Lelinski, alleging he committed fourth degree sexual assault against Josephine G. on January 15, 2005. (R.85). All six counts were tried together.

The State also filed a motion to introduce other acts evidence against Lelinski. (R.16). These were allegations of six women who claimed to have been assaulted by Lelinski between 1997 and 1998.[1] (R.16 at 5-10). The offer of proof included:

- Kiwanna F. alleged that in April of 1997, Lelinski responded to her complaint about a landlord. He then made several visits to her house in the squad car, making sexually suggestive comments. After three weeks, Lelinski made his way into her house and threatened to arrest her if she did not cooperate with him. She claimed he had rough sex with her but they then had a two year relationship. There were also allegations that Lelinski made comments to Kiwanna F. calling her a "black bitch," "nigger bitch" and stating, "ain't that the way you black bitches like it?".

- Denise C. alleged that in 1997, while she was working as a prostitute, Lelinski approached her in an unmarked squad car and told her to get into the vehicle. She performed oral sex on him for $20. Two days later, he showed up at her house in uniform, started talking about sex, and masturbated onto her carpet. During these encounters, Lelinski allegedly called Denise C. a "bitch," "nasty whore," and "you dirty black bitch".

- Shirley D. alleged that in 1997, while she was working as a prostitute, Lelinski told her that she had an open warrant, put her in the squad, and drove her to an isolated parking lot, where she performed oral sex on him. During this encounter, she alleged that Lelinski called her "bitches," "black whores," and "dope fiend bitch".

- Helen M. alleged that in 1998, she reported a strong-armed robbery, for which Lelinski later showed up to her work, in uniform, told her she had warrants, handcuffed her, and placed her in his personal car. He then allegedly drove her to a remote park, performed oral sex on her, and had non-consensual penis-to-vagina sex with her.

The State offered this evidence under §904.04(2) Wis. Stats. (2007-08) for plan, *modus operandi* (MO), and "escalation:"

---

[1] Only four "other acts" witnesses actually testified. Thus, only these four are discussed.

> The plan is for him to utilize his position as a police officer to meet women who are vulnerable because of their relative legal position, their poverty, and their personal situations all of which he gains knowledge of by questioning them in the course of his duties as a police officer.
> He then ingratiates himself to them taking advantage of his status as a police officer, encouraging them to continue to contact him but also continuing to remain in contact with them to take advantage of them ultimately by placing them in a position that is really one that they simply cannot extricate themselves from.
> It's both this plan and ultimately to get sexual gratification from these women and also his M.O. In addition, the way that this plays out it also I believe very clearly demonstrates an escalation of this process.
> ...
> It demonstrates an escalation of this process. The beginning events are far less egregious that the ultimately charged offense. And as I go through this, I think the court can see that Mr. Lelinski's methods develop over the course of time. He gets bolder. He takes more advantage. I think that he figures out how to use their vulnerabilities in a better way.
> So the things he's doing at the end of this time frame that begins in 1997 and ends in October of 2005 are much bolder and much more aggressive than they are at the beginning, but the beginning is sort of how he starts with this plan and this MO, and then you see how it develops over the course of time.

(R.68 at 12-13).

The court found that: "the State wants to introduce these other acts as part of a motive or plan and certainly intent, and the Court must use the greater latitude rule..." (Id. at 33). The court then found that the evidence would be relevant using "time and place and circumstances, the availability of other evidence, the similarity of the acts, the commonality of those acts, the traits, the degrees that these elements are disputed, the similar type of victims, the fact that the vulnerability of the alleged victims, the plan consisting of investigation, the knowledge of those alleged victims, the plan consisting of the threats, the visits, the comments that were made all are taken into consideration..." (Id. at 34). Then using the "greater

latitude test," the court found that the probative value outweighed the danger of unfair prejudice, and admitted the other acts evidence over Lelinski's objection. (Id.)

Also, before the trial, the State raised the issue that Amanda R. had two pending obstruction cases, but since there were no convictions, it would not be proper to impeach her on this. (R.75 at 19). Defense counsel said he would not impeach her on these charges. (Id.) In fact, Amanda had recently lied to the police in two separate incidents, giving them a false name, and was only caught after the person who was named in the citation demonstrated her innocence. (R.53 at 3-20).

The trial started with the testimony of Amanda R. She testified that she first met Lelinski in July of 2005 when he responded to a call at her mother's house. (R.75 at 48). She also saw and spoke to Lelinski outside her home in August of 2005 and October of 2005. (Id. at 49-50 & 53-57). Lelinski told her that he would help her clear a traffic warrant. (Id. at 68).

Amanda R. testified that on October 18, 2005, she saw a shadow pass her window and, when she opened the door, Lelinski was standing there wearing jeans, a regular shirt, and sneakers. (Id. at 80-81). He walked in and sat down on a couch. (Id.) When asked what he was doing there, Lelinski replied "to see what you are doing." (Id. at 83). She told him it was 2:00AM and asked if he didn't have something better to do. (Id. at 84). When Lelinski began leaning close to her on the couch, she asked what he was doing. (Id. at 84-86). Amanda R. claimed that Lelinski then rubbed her shoulder, arm, and breast without her consent. (Id. at 87). She further claimed that Lelinski then unbuckled his pants, exposed himself, began playing with himself, grabbed her hair and shoulder, and unsuccessfully tried to force her mouth towards his penis. (Id. at 87-89). She also believed that he ejaculated while playing with himself. (Id. at 97). Lelinski then threw $20 in the room and told her that someone would pick her up on the warrant. (Id. at 95). A few days later, she called the police. She also hired an attorney and filed a notice of claim against the City of Milwaukee based on Lelinski's actions. (R.76 at 47-53).

Josephine G. also testified at trial.[2] (R.108 at 79-147). She testified that on January 15, 2005, there was a domestic disturbance at her house and Lelinski was one of the four

---

[2] Myrtle M. also testified but, since Lelinski was acquitted on those allegations, he does not describe her testimony here.

officers who responded. (Id. at 82-85). The individuals involved were separated, with Lelinski taking Josephine G. to a side room. (Id. at 85-87). Josephine G. testified that Lelinski then told her to lift up her shirt (the only thing that she alleged to be wearing), so he could check for weapons. (Id. at 92-93). Lelinski then hit her on the buttocks with his hand and told her that she had "a nice snatch." (Id. at 97-98).

Lelinski did not testify on his behalf. However, he called the neighbors of Amanda R. - Brent and Christine Schliepp. Brent Schliepp observed the second contact between Lelinski and Amanda R., where she was flirting with Lelinski. (R.79 at 62). He also observed the October 18, 2005, incident by peeking into Amanda R.'s windows, observing Lelinski pleasurably laying back with both hands on the couch and no sign of struggle. (Id. at 66-69). He testified that after Lelinski left, Amanda R. called his house to say that "she got him" and "she and her man were going to be rich." (Id. at 72). Christine Schliepp also testified that Amanda R. said that she now had a case against Lelinski and she had the semen to prove it. (R.80 at 69).

The jury found Lelinski guilty of counts one, two, and three (involving Amanda R.) and count six (involving Josephine G.). However, it acquitted on counts four and five (involving Myrtle M.). The court then sentenced Lelinski to 27 years for count one, broken down into 21 years of initial confinement followed by six years of extended supervision. The court gave a concurrent sentence of 15 years (nine years IC) for count two, a concurrent nine month sentence for count three and a consecutive nine month sentence for count six.

### Arguments

#### I. A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254 IS THE PROPER REMEDY FOR SETTING ASIDE PETITIONER'S GUILTY CONVICTION.

Lelinski filed a post-conviction motion, which the circuit court denied with a one page opinion, adopting the position of the State's brief. (R.56 & 60). Lelinski then filed a notice of appeal. (R.61). The Wisconsin Court of Appeals affirmed the conviction. See State v. Lelinski, 2009 WI App 110, 771 N.W.2d 929.

First, the appellate court upheld the circuit court ruling that there was sufficient evidence to support the conviction for count one - second degree sexual assault by use or threat of

force. State v. Lelinski, 2009 WI App 110, 771 N.W.2d 929 at ¶9-15. The court held "... it was reasonable for a jury to infer that the hand-to-breast assault occurred following a history of psychological intimidation, sufficient to constitute a use or threat of force." Id. at ¶14. The court continued that the jury was "free to use the past history and the context to conclude that the third element of second degree sexual assault had been satisfied." Id.

The court then ruled that the circuit court did not err in allowing other acts evidence. Id. at ¶16-25. First, the court found that the evidence "was relevant to Lelinski's intent over time to use his position as a police officer to get sexual gratification. Each victim was someone in need of police help or protection or wanted by police on a warrant." Id. at ¶23.

Lastly, the court found that Lelinski was not denied his constitutional right to counsel. Id. ¶32-38. The court held that counsel's failure to bring forth her character of untruthfulness through her two recent incidents where she gave a false name to police did not make a difference in this credibility contest. Id.

Lelinski then petitioned the Supreme Court of Wisconsin for review. The court denied this petition on September 24, 2009.

With all state remedies exhausted, Lelinski presents his petition to this Court, believing that a writ of habeas corpus is the proper remedy for setting aside his guilty conviction.

## II. THE PETITIONER'S RIGHT OF DUE PROCESS WAS VIOLATED BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE; SPECIFICALLY, THAT ALL REQUIRED ELEMENTS OF THE CRIME WERE NOT PROVEN.

To prove second degree sexual assault by use or threat of force, in violation of §940.225(2)(a), the State must prove three elements beyond a reasonable doubt: 1) that the defendant had sexual contact with the victim; 2) the victim did not consent to the sexual contact; and 3) the defendant had sexual contact with the victim by use or threat of force or violence. §940.225(2)(a) Wis. Stats. (2007-08).

The Wisconsin Court of Appeals found that the "psychological intimidation" was evidence of a threat of force, which occurred before Lelinski touched Amanda R. through her

clothing. State v. Lelinski, supra at ¶12. Further, the court held that because of "the threat that can be inferred from Lelinski's previous encounters with Amanda and the context in which this assault occurred." Id. at ¶13. The court found that the intimidation included calls to the house, visiting the house, bringing up the issue of her outstanding warrant, asking for the cost of a private dance, and arriving at her house unannounced. Id. at ¶15. However, none of these actions arise to a level of a threat of force, made prior to the assault, as defined by Wisconsin Case Law.

There are two cases relevant to this matter which address the issue of use or threat of force in the sexual assault context. In State v. Bonds, 165 Wis.2d 27, 477 N.W.2d 265 (1991), the Wisconsin Supreme Court held that the "use of force" applied as part of the actual battery can prove the required element of force for the sexual assault, stating:

> We recognize that the force element of sexual assault 'maintains the proscription against force or compulsion not as separate and distinct forms of conduct, but as a more generalized concept, including force threatened and force applied, directed toward compelling the victim's submission.'

Id. at 32, 477 N.W.2d at 267.

Also instructive is State v. Hayes, 2003 WI App 99, 264 Wis.2d 377, 663 N.W.2d 351. Hayes held that a single threat was sufficient to meet the burden of proof, as long as it occurred before the sexual contact. Id. at ¶15.

This petition for a writ of habeas corpus should be granted for two reasons. First, there is no case law that hold that "psychological intimidation" alone constitutes a threat of force. Second, citing Baldwin, the Wisconsin Court of Appeals ruled that the force element need not be a separate and distinct act, but may be viewed as a more generalized concept of conduct compelling the victim's submission. State v. Lelinski, supra. at ¶14. However, Baldwin was a case about whether a jury had to be instructed separately about force and a threat of force, not a case about whether prior contacts can constitute a threat. State v. Baldwin, 101 Wis.2d 441, 450, 304 N.W.2d 742, 747-748 (1981). The use and threat of force was obvious and distinct in Baldwin:

> Inside the apartment Baldwin suggested that he and the victim have sexual intercourse, and he began

> to touch her on the breasts. The victim struggled to
> resist Baldwin, and Baldwin threatened that, if she
> did to submit, she would be hurt. As the assault
> continued, Baldwin struck, choked, and threatened the
> victim and twice dragged her from locations in the
> apartment into a bedroom where he attempted to force
> her to perform oral sex with him, had sexual
> intercourse with her, and performed cunnilingus on
> her.

State v. Baldwin, 101 Wis.2d at 443, 304 N.W.2d 742, 744-745.

There was not any evidence presented by which a jury, acting reasonably, could have found Lelinski guilty of count one of his criminal charges. The basis for count one was that Lelinski made sexual contact with Amanda R.'s breast, without her consent, using or threatening force or violence.

Amanda R. testified that, at 2:00AM, she heard a car, which she thought was her boyfriend's, and she opened the door to her apartment. (R.75 at 80 & 83-84). Lelinski was standing there, dressed in a red shirt, blue jeans, and sneakers. (Id. at 80-81). 'Lelinski walked in and sat down on the couch and said he came by to see what she was doing. (Id. at 81-83). Lelinski then leaned toward her and started rubbing her shoulder, arm, and breast over her clothing. (Id. at 86-87). She asked him what he was doing and he did not have any response. (Id. at 87). Amanda R. testified that as her daughter appeared in the room, Lelinski had unbuckled his pants, exposed himself, and began playing with his penis. (Id. at 89). Amanda R. denied giving consent to any of this behavior. (Id. at 87 & 94).

While Amanda R. testified that Lelinski touched her breast without consent, there was no credible evidence that he either: a) touched her breast with force or threat of force, as in Bonds, or b) that prior to touching her breast he used or threatened force to compel her to submit to the touching, as in Hayes. The State attempted to use the Bonds scenario, arguing in closing that "in Amanda's case, it is the use of overt force and violence here which is different than what we have in Myrtle's case. The second degree sexual assault count, one relates to the hand to breast contact as he is exerting his physical influence over her and forcefully grabbing onto her breasts." (R.81 at 48). There is simply no evidence that he forcefully grabbed her on the breast. Amanda testified that he rubbed it. (R.75 at 87). Rather, the evidence shows that Lelinski arrived at her house in his civilian clothes, sat on
8

her couch, leaned towards her and rubbed her shoulder, arm, and breast. Any force that was used (in attempting to move Amanda's mouth towards Lelinski's penis - count two) occurred *after* the rubbing of her breast. Thus, under Hayes, it cannot support the element of force for count one.

While Lelinski did see and speak to Amanda R. prior to the assaults, there was not an overt threat given. Lelinski believes that "psychological intimidation" cannot meet the definition of use of force as defined by case law and the Wisconsin legislature. Since there is no credible evidence to show that there was force used or threatened to have sexual contact with Amanda R., the conviction for count one must be vacated and dismissed.

III. **THE PETITIONER'S RIGHT TO DUE PROCESS WAS VIOLATED BECAUSE OTHER ACTS EVIDENCE PERTAINING TO THE PETITIONER'S CHARACTER WAS ENTERED INTO EVIDENCE DESPITE THE FACT THAT THE EVIDENCE'S PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY THE UNFAIR PREJUDICE THAT IT POSED TO THE PETITIONER.**

The other acts evidence was not relevant to show plan, MO, or intent. Since these were not relevant, it was an erroneous exercise of discretion to allow the evidence.

The evidence was not relevant to prove Lelinski had a plan in this case for two reasons. First, there is not a linkage between the prior acts as a step to commit the charged act, thus plan is not of consequence to the determination. "There must be a linkage between the two events that permits the conclusion that the other act led to the commission of the offense charged." State v. DeKeyser, 221 Wis.2d at 448, 585 N.W.2d at 674. "There must be some evidence that the prior acts were a step in a plan leading to the charged offense, or some other result of which the charged offense was but one step." State v. Cofield, 2000 WI App 196 at ¶13, 238 Wis.2d 467, 618 N.W.2d 214. Like DeKeyser, the State can simply not show that in 1997 and 1998, when Lelinski allegedly assaulted the other individuals, he also intended to eventually assault Amanda R.

The Wisconsin Court of Appeals held that the factual scenario and presentation of the facts in this case was distinguishable from DeKeyser. State v. Lelinski, supra at ¶24.

Further, the other acts evidence was not relevant to show a plan because it does not have a tendency to make a consequential

fact more or less probable in this action. This is because there is not a nearness in time, place, and circumstance between the charged offenses and the other acts allegations, as shown below. (R.53 at 21 & 22).

Shirley D.'s allegations are not near in time, place, and circumstance to the charged offense. According to her testimony, in 1997, Lelinski drove up, in full uniform, as she was working as a prostitute, and ran her name which revealed warrants. (R.78 at 39-40). Lelinski placed her in the squad, drove to a remote location, and made her suck his penis. (Id. at 42). Lelinski allegedly made berating comments about being a "black bitch," "nasty whore," "slut," and "fucking dope fiend bitch." (Id. at 43 & 47)

Denise B.'s allegations are not near in time, place, and circumstance to the charged offense. She testified that, in 1997, Lelinski and other officers, while in full uniform, stopped her and her friends as they come out of a crack house. (R.79 at 39-40). Lelinski and Denise B. walked a few blocks to her residence so she could get identification. (Id. at 41). They went into her apartment and once there, Lelinski masturbated and ejaculated on her floor. (Id. at 41 & 47). He also allegedly made comments about her being a "nasty whore" and "black bitch." (Id. at 41).

Helen M.'s allegations are not near in time, place, and circumstance to the charged offense. In 1998, Helen reported a robbery. (R.78 at 49-51). She alleged that Lelinski appeared at her work, told her that she had a warrant, handcuffed her, and drove her away in his personal vehicle to a remote location. (Id. at 53-56). She claimed Lelinski then got in the back seat with her, performed oral sex on her, and had non-consensual penis-to-vagina sex with her. (Id. at 60-61). He then drove her back to her work and told her not to tell anyone as he could find her. (Id. at 59).

Lastly, Kiwanna F.'s allegations are not near in time, place, and circumstance to the charged offense. In 1997, Lelinski responded to her complaint about her landlord. (R.78 at 76-77). A week later, Lelinski returned in his squad car, grabbed her breast, and told her he would give her a ticket if she did not do as he said. (Id. at 86-88). They then had penis-to-vagina intercourse. (Id. at 89). Lelinski and Kiwanna F. then had a sexual relationship until October of 1998. (Id. at 97).

These other acts were remote in time to the charged offenses: seven to eight years prior to Amanda R.'s and Josephine G.'s allegations. The location of the other acts are not only different from Amanda R.'s and Josephine G.'s allegations, they are different from each other. (R.53 at 21 & 22). The circumstances of the other acts are not only different from Amanda R.'s and Josephine G.'s allegations, they are different from each other. (Id). These acts lacked similarity with the charged offenses and thus are not relevant. Rather, this evidence was used in violation of the character rule: because Lelinski may have had non-consensual sex with women in the past, it is more probable that he had non-consensual sex or contact with Amanda R. and Josephine G.

The other acts were not relevant to prove Lelinski's MO either, as MO requires that the acts demonstrate a "uniqueness" that places a defendant's "signature" on the acts. Thus, there must be substantial similarities between the other acts and the charged acts - even more so than if offered to prove plan. Here, as shown above, this is not the case. (R.53 at 21 & 22). The acts simply do not demonstrate "a particularly stylized method." Rather, it was used to show that Lelinski had non-consensual sex with many others, in different locations and circumstances, so he probably did with Amanda R. and Josephine G. also - a violation of the character evidence rule. The Wisconsin Court of Appeals held that the evidence was relevant to "Lelinski's intent over time to use his position as a police officer to get sexual gratification. Each victim was someone in need of police help or protection or wanted by police on a warrant." State v. Lelinski, supra at ¶23. This holding alone shows three different types of people: 1) those in need of help; 2) those in need of protection; and 3) those who are wanted. This is not a signature act as to one type of person. Thus, the behavior described involving different people in different types of situations does not constitute "a particularly stylized method" needed to constitute MO.

Further, MO is historically used to prove the identity of the defendant. Identity was not a fact of consequence at issue in this case. Lelinski had Brent and Christina Schliepp testify, who placed him at Amanda R.'s house. There was no contesting that Lelinski was in Amanda R.'s house on October 18, 2005.

Thus, prong two of Sullivan was clearly not satisfied. See State v. Sullivan, 216 Wis.2d 768, 576 N.W.2d 30 (1998). The trial court erroneously exercised its discretion in allowing

this evidence, and the Wisconsin Court of Appeals erred in not reversing the circuit court.

The only probative value the other acts evidence provided were in violation of the character evidence rule. Thus, any probative value was clearly outweighed by the danger of unfair prejudice to Lelinski because the old allegations were designed to appeal to the jury's sympathies, arouse its sense of horror, and provoke its instinct to punish Lelinski, and it did so in a variety of ways.

First, the introduction of the prior incidents unfairly prejudiced Lelinski from the standpoint that the jury would convict in close credibility cases just because of the sheer number of allegations. The State used these numbers to its advantage numerous times in sentencing: referring to Lelinski as a "sexual predator" (R.81 at 23 & 78); stating he used his authority in a perverse and disgusting way "over and over again" (Id.); stating "let's look at the continuum of individuals that we heard from here" (Id. at 24); and referred to a pattern that has been going on "practically 10 years." (Id. at 81).

Second, there was a powerful racial overtone to the other acts allegations. Lelinski is white. The other acts witnesses are African-Americans.[3] While there was no evil racial motivation alleged in the charges against Lelinski, there is a plethora of racist statements, attributed to Lelinski, contained in the other acts allegations. Each other acts witness, with the exception of Helen M., testified that Lelinski used racial slurs, calling them "black bitches," "black whores" (R.78 at 42), "dirty black bitch" (R.79 at 41), "you black women like it rough," and "nigger bitch." (R.78 at 87-88). The allegations of racist insults had absolutely nothing to do with whether Lelinski had committed sexual assault; rather, it was designed to enrage the jury to punish Lelinski as a racist.[4]

---

[3] While not used at trial, the State understood this racial theme and used it at sentencing: "One of the other sort of themes that runs through the pattern of behavior for Mr. Lelinski is who he targets in terms of race. With the exception of Amanda, every other person that I am aware of, including the people who contacted the State, either during the course of the trial or after the trial, are African-American or Hispanic." (R.83 at 13).

[4] What makes this type of evidence even more unfairly prejudicial was that it took place in a racially charged atmosphere, as three white Milwaukee police officers had recently been acquitted of beating a bi-racial man (Frank Jude), for which the community was outraged. (See R.11).

It is clear in this case that any possible probative value of the other acts evidence was substantially outweighed by the unfair prejudice of the racially explosive overtones of the other acts evidence. The courts violated Lelinski's Constitutional right to due process when it erroneously exercised its discretion in allowing these acts into this case.

IV. **THE PERFORMANCE OF PETITIONER'S TRIAL COUNSEL WAS SO DEFICIENT AS TO BE CONSIDERED INEFFECTIVE, FOR FAILING TO BRING FORTH PRIOR INSTANCES OF THE VICTIM'S UNTRUTHFUL CHARACTER IN A CREDIBILITY CONTEST.**

Failure to properly impeach a victim with facts in cross-examination can constitute deficient performance in a "he-said, she-said" type case. See State v. Jeannie M.P., 2005 WI App 183, ¶11-12. In this type of case "[a]ny information that would serve to undermine the credibility of the alleged victim ... [is] thus essential to an effective defense." Id. at ¶12.

Here, counsel was aware of the allegations that Amanda R. had recently lied to the police and decided not to use it. (R.75 at 19). These recent allegations of lying included: 1) an August 15, 2005 incident where Amanda R. told Officer Cheryl Rossmann that her name was Brandi E. Walls; and 2) an October 15, 2005 incident where Amanda R. told Officer Michael Dukat that her name was Brandi E. Walls. (See R.53 at 3-20). Brandi E. Walls had to appear in court to be fingerprinted to prove that she was not the person who received the citation. Id.

These two incidents go towards Amanda R.'s character for untruthfulness. Lying to the police is clearly admissible to show untruthful character under §906.08(2) Wis. Stats. (2007-2008). 7 Daniel Blinka, Wisconsin Practice: Evidence §608.2 (2007 2nd ed.) ("For example, lying, cheating, filing false records or committing fraud all fall within this broad category.") And "[a] witness's character for untruthfulness is *always* an issue at trial, regardless of their testimony or their status as a lay or expert witness." 3B Jay E. Grenig, et al, Wisconsin Practice: Civil Rule Handbook §906.08:1 (2008 ed.) (emphasis in original). In a "he-said, she-said" credibility contest, any evidence that attacks the credibility of Amanda R. is essential to the defense.

Further, three officers and the fingerprint identification technician could have been called to testify that Amanda R. had a reputation in the community for being untruthful. This would

have been admissible under §906.08(1)(a) Wis. Stats. (2007-2008). This is because she gave false information to Officer Rossmann on August 15, 2005 (R.53 at 3-20), gave false information to Officer Culver on August 25, 2005[5] (R.108 at 66-70), and gave false information a third time on October 15, 2005 to Officer Dukat. (R.53 at 3-20). Additionally, the fingerprint technician could have testified about Amanda R.'s untruthful reputation as well, since Amanda R. made Brandi Walls come to court and jump through hoops to prove her own innocence.

The failure of counsel to use this evidence to attack the credibility of the complaining witness in a "he-said, she-said" credibility contest was below the objective standards of criminal defense representation.

Counsel's deficient performance in failing to bring forth impeachment evidence can be prejudicial to the defense. In Jeannie M.P., the court held: "We conclude that counsel's sole reliance on such [jury] skepticisms [as to the plausibility of the victim's story] to undermine [the victim's] credibility, when other evidence could have been marshaled for impeachment purposes was not only objectively unreasonable but also prejudicial to the defendant." State v. Jeannie M.P., supra at ¶28. It is prejudicial to Lelinski as well.

This was a "he-said, she-said" credibility contest and the credibility of Amanda R. had to be attacked. There was no other evidence, other than Amanda R.'s testimony, to show that Lelinski had used or threatened force or had any sexual contact with Amanda R. Thus, without this impeachment, we cannot have any confidence in the outcome. It is important to note that Lelinski does not have to show that he would have been successful if this evidence would have been admitted, but only that there is a reasonable probability that the result would have been different. Without the utilization of this available evidence to attack Amanda R.'s credibility, we cannot have confidence in this verdict. Thus, Lelinski has met the second prong of the Strickland analysis. See Strickland v. Washington, 466 U.S. 668 (1984).

The Wisconsin Court of Appeals stated that Lelinski was not prejudiced by counsel's failure. State v. Lelinski, supra at ¶36-38. Its reasoning was: 1) that Amanda's recent lies to the

---

[5] Amanda R. testified that it was her mother who gave false information to Officer Culver when she first met Lelinski (R.75 at 53) ("My mother gave officer Lelinski my sister's name because my mother said that she was pretty sure that I had warrants.")

police did not involve Lelinski; 2) the jury was aware that Amanda gave the police false names in the past; and 3) counsel impeached Amanda's credibility. Id.

The Wisconsin Court of Appeals failed to address essential constitutional issues for ineffective assistance of counsel claims. First, Jeannie M.P. holds that in a "he-said, she-said" credibility contest, "[a]ny information that would serve to underline the credibility of the alleged victim...[is] thus essential to an effective defense." State v. Jeannie M.P., supra at ¶12. Further, the learned treatises hold that "[a] witness's character for truthfulness is *always* an issue at trial, regardless of their testimony or their status as a lay or expert witness." 3B Jay E. Grenig, et al, Wisconsin Practice: Civil Rule Handbook §906.08:1 (2008 ed.) (emphasis in original).

The Wisconsin Court of Appeals' conclusion that Amanda R.'s untruthful character is irrelevant because it did not involve Lelinski is erroneous, as this evidence goes to her credibility. Further, the appellate court's conclusion that the jury was aware that Amanda R. previously gave false names to the police was incorrect. She never testified to this; rather, she told the jury that her mother gave the false name. (See R.75 at 53). Lastly, while counsel did cross-examine the witness about her allegations, he did not attack her character for untruthfulness. In this type of "he-said, she-said" contest, counsel needed to bring forth this attack for untruthfulness.

## Relief Requested

Because the State failed to present sufficient evidence that shows Lelinski used or threatened force to obtain sexual contact, which caused the jury to have insufficient evidence on which to convict, the conviction for the charge of Second Degree Sexual Assault by Use or Threat of Force must be vacated and dismissed. Additionally, Lelinski is entitled to a new trial based upon the court's erroneous exercise of discretion in admitting the prejudicial other acts evidence and because he was denied the right to effective counsel.

Dated this 1st day of February, 2010.

*Steven J. Lelinski*
Steven J. Lelinski
Petitioner, pro se